**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
STUART SLEPPIN and ROBERT TEEMAN
Derivatively as Members of THINKSCAN.
COM, LLC, and THINKSCAN.COM, LLC,

                        Plaintiffs,

       v.

THINKSCAN.COM, LLC, and JOEL
WEINBERGER, DREW WESTEN, ROBERT
BORNSTEIN, and IMPLICIT STRATEGIES,
LLC,

                        Defendants.
--------------------------------------------------------X

**DECISION AND ORDER**
14-CV–1387 (ADS)(ARL)

<u>**APPEARANCES:**</u>

**Sadis & Goldberg, LLP**
*Attorneys for the Plaintiffs*
551 Fifth Avenue, 21st Floor
New York, NY 10176
   By: Douglas Hirsch, Esq.
      Jennifer Rossan, Esq.
      Michelle N. Tanney, Esq., Of Counsel

**Feeney Law Office**
*Attorney for the Defendants Joel Weinberger, Drew Westen, Robert Bornstein and Implicit Strategies, LLC*
South Hill Business Campus
950 Danby Road, Suite 210
Ithaca, NY 14850
   By: David W. Feeney II., Esq., Of Counsel

**Wilson, Elser, Moskowitz, Edelman & Dicker, LLP**
*Attorney for the Defendant Drew Westen*
150 East 42nd Street
New York, New York 10017-5639
   By: Jura C. Zibas, Esq., Of Counsel
      Stephen James Barrett, Esq., Of Counsel

**SPATT, District Judge**.

On May 3, 2012, the Plaintiffs Stuart Sleppin, Robert Teeman, and Thinkscan.com, LLC ("Thinkscan"), derivatively, (collectively, "the Plaintiffs") commenced this action against the Defendants Thinkscan and Joel Weinberger ("Weinberger") in the Supreme Court of the State of New York, County of Suffolk, seeking dissolution of Thinkscan and asserting various state law causes of action against Weinberger for damages. On July 24, 2012 and February 7, 2014, the Plaintiffs amended their state court complaint twice to add the Defendants Drew Westen ("Westen"), Robert Bornstein ("Bornstein"), Implicit Strategies, LLC ("Implicit"), and Westen Strategies.

On March 3, 2014, the Defendants Westen Strategies and Westen filed a notice of removal to federal court pursuant to 28 U.S.C. § 1441(b) on the ground that, the Plaintiffs state law claims were preempted by 17 U.S.C. § 301, *et seq.*, of the Copyright Act (the "Copyright Act"), and the case fell within the Court's federal question jurisdiction under 28 U.S.C. § 1331. On March 12, 2014, the Defendants Thinkscan, Weinberger, Bornstein, and Implicit filed a petition to join the notice of removal.

On March 27, 2014, the Plaintiffs filed a third amended complaint withdrawing its state law claims for conversion, unjust enrichment, and for injunctive relief and removing Westen Strategies as a Defendant. On April 21, 2014, the Defendants Weinberger, Bornstein, and Implicit asserted counterclaims for various state law causes of action, as well as claims for declaratory judgments as to copyright ownership and non-infringement.

Presently before the Court is the Plaintiffs' motion to remand this action to New York State, Supreme Court, Suffolk County, and for attorneys' fees and costs incurred in connection with this motion. The Plaintiffs argue that this Court does not have jurisdiction over any of the

claims of the parties. For the reasons set forth below, the Court grants the Plaintiffs' motion to remand and denies their motion for attorneys' fees and costs.

## I. BACKGROUND

This case involves a dispute over a failed business venture involving the Plaintiffs Stuart Sleppin and Robert Teeman and the Defendant Joel Weinberger. In the late 1990s, the three individuals started a business with the aim of developing software capable of performing product evaluations of consumer products to help potential clients sharpen their marketing and advertising strategies. (Third Am. Compl. ¶ 16; the Defs.' Answer and Countercls. ¶ 197.)

The Plaintiffs allege that on January 21, 1999, Sleppin, Weinberger, and Teeman formed Research.com, Inc. as a New York corporation ("Research.com"). (Third Am. Compl. ¶ 18.)

From about 1999 to 2007, the Plaintiffs allege that Sleppin, Teeman, and Weinberger oversaw computer programming teams developing software which would implement the product surveys that the joint venture sought to market to the advertising industry. (Third Am. Compl. ¶¶ 27, 32.) During this period, the Plaintiffs also allege that the Defendant Weinberger asked the Defendants Drew Westen and Robert Bornstein, two psychology academics, to assist in developing the software. (Third Am. Compl. ¶ 30.)

The Plaintiffs allege that in about 2007, Sleppin, Teeman, and Weinberger formed a new entity, Thinkscan, a New York limited liability company, and transferred all of the assets and liabilities from Research.com to Thinkscan. (Third Am. Compl. ¶ 41.)

From 2007 through 2009, the Plaintiffs allege that Thinkscan continued to refine its software using its own employees, as well as paying a team of computer programmers in Manila. (Third Am. Compl. ¶ 50.) During this period, the Plaintiffs allege that Thinkscan launched its software and was engaged by several corporate clients. (Third Am. Compl. ¶ 60.)

On October 27, 2009, then-counsel for Weinberger and Westen sent a letter to Thinkscan ending their business relationship with the Plaintiffs. (Third Am. Compl. ¶ 69; the Defs' Answer and Countercls. ¶ 340.)

After Weinberger and Westen left Thinkscan, the Plaintiffs allege that Weinberger, Westen, and Bornstein formed Implicit, a company designed to compete with Thinkscan. (Third Am. Compl. ¶ 19.) The Plaintiffs contend that Weinberger, Bornstein, and Westen misappropriated, among other things, Thinkscan's customer lists, presentation materials, and software for the benefit of Implicit. (Third Am. Compl. ¶ 84.) The Plaintiffs also contend that immediately after they left Thinkscan, Weinberger and Westen engaged in negotiations to transfer Thinkscan's clients to Implicit. (Third Am. Compl. ¶ 99.) Based on these actions, the Plaintiffs have brought state law claims against the Defendants seeking an order directing that Thinkscan's property be assigned to its creditors in satisfaction of certain debts owed to the creditors and for damages of at least $355,044.30. (Third Am. Compl. ¶ 151.)

In response, the Defendants maintain that the Plaintiffs formed Research.com and Thinkscan without their knowledge or consent, and believed that the parties' business venture was organized as an unincorporated partnership from the 1990s until October 27, 2009. (The Defs.' Answer and Counterclaims ¶¶ 155, 206, 215, 216.) As such, the Defendants maintain that the software and presentation materials at issue were owned by Weinberger and that he never assigned ownership of these works to the Plaintiffs. (The Defs.' Answer and Countercls. ¶¶ 401–404.) The Defendants Weinberger and Westen further allege that they terminated their relationship with Thinkscan over disputes with the Plaintiffs about whether the Thinkscan software could be reliably marketed, as it allegedly contained design flaws. (The Defs.' Answer and Countercls. ¶ 277.) They also allege that they terminated their relationship with Thinkscan

4

over a dispute about whether Weinberger would give up an additional percentage of his equity in the business to help finance efforts by additional computer programmers to fix the alleged software flaws.  (The Defs.' Answer and Countercls. ¶ 281.)  Based on these actions, the Defendants assert various counterclaims, including two claims for a declaratory judgment that the works at issue were owned by Weinberger and not misappropriated by the Defendants in violation of the Copyright Act, 17 U.S.C. § 101, *et seq.* (The Defs.' Answer and Counterclaims ¶¶ 407, 528.)

## II.  DISCUSSION

### A. <u>Legal Standard on a Motion to Remand</u>

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441; <u>see</u> <u>also</u> <u>Lincoln Property Co. v. Roche</u>, 126 S. Ct. 606, 610, 163 L. Ed. 2d 415 (2005) (explaining that § 1441 "authorizes the removal of civil actions from state court to federal court when the action initiated in state court is one that could have been brought, originally, in a federal district court").  Accordingly, for a federal court to have removal jurisdiction, it must have original subject matter jurisdiction over a cause of action.  <u>See, e.g.</u>, <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987) ("Only state-court actions that could have been filed in federal court may be removed to federal court by the defendant.")

Following the removal of a state court action, "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  Defendants bear the burden of demonstrating that federal subject matter

jurisdiction exists. <u>Cohen v. Narragansett Bay Ins. Co.</u>, No. 14–CV–3623 (PKC), 2014 WL

4701167, at \*1 (E.D.N.Y. Sept. 23, 2014) (quoting <u>Cal. Pub. Emps.' Ret. Sys. v. WorldCom,</u>

<u>Inc.</u>, 368 F.3d 86, 100 (2d Cir. 2004)).

      Pursuant to 28 U.S.C. § 1331, the district courts have original subject matter jurisdiction

"over all civil actions arising under the [United States] Constitution and the laws and treaties of

the United States." Under the "well-pleaded complaint rule," federal jurisdiction is present only

if a question of federal law appears on the face of the plaintiff's "well-pleaded complaint" —

thus requiring a court to ignore any and all answers, defenses, and counterclaims. <u>Fleet Bank,</u>

<u>Nat'l Ass'n v. Burke</u>, 160 F.3d 883, 886 (2d Cir. 1998) ("[The well-pleaded complaint] rule

requires a complaint invoking federal question jurisdiction to assert the federal question as part

of the plaintiff's claim and precludes invoking federal question jurisdiction merely to anticipate a

federal defense.") (internal citations omitted).

      However, there are several narrow exceptions to the "well-pleaded complaint rule."

Relevant to the instant case, where a plaintiff pleads only state law claims, district courts may

still have original jurisdiction over the matter if the state law claims are completely preempted by

the Copyright Act. <u>Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.</u>, 373 F.3d 296, 304 (2d Cir.

2004); *see also* 28 U.S.C. 1338(a) ("The district courts shall have original jurisdiction of any

civil action arising under any Act of Congress relating to patents, plant variety protection,

copyrights and trademarks."). However, the mere fact that "a case concerns a copyright does not

necessarily mean that it is within the jurisdiction of a federal district court." <u>Jasper v. Bovina</u>

<u>Musica, Inc.</u>, 314 F.3d 42, 46 (2d Cir. 2002). Rather, the question of whether a state law claim

arises under the Copyright Act "poses among the knottiest procedural problems in copyright

jurisprudence."  Gener-Villar v. Adcom Group, Inc., 417 F.3d 201, 203 (1st Cir. 2005) (quoting 3–12 M. Nimmer & D. Nimmer, Nimmer on Copyright § 12.01[A] (2001)).

The Second Circuit has held that a state law claim arises under the Copyright Act when: "(1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106."  Briarpatch Ltd. L.P., 373 F.3d at 305.  The first prong of the test is called the "subject matter requirement" and the second prong of the test is called the "general scope requirement."  Id.

To satisfy the "subject matter requirement," a party must show that "[its] claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works."  Id. (citation omitted).  These categories include, among others, pictorial, graphic, and literary works.  See 17 U.S.C. § 102.  The Second Circuit construes the "subject matter requirement" broadly:  in particular, the works at issue "need not consist entirely of copyrightable material in order to meet the subject matter requirement."  Briarpatch Ltd., L.P., 373 F.3d at 305; see also Integrative Nutrition, Inc. v. Acad. of Healing Nutrition, 476 F. Supp. 2d 291, 296 (S.D.N.Y. 2007) (holding that a website and brochures fell "within the ambit of copyright protection" and therefore satisfied the subject matter requirement).

To satisfy the "general scope requirement," a party must show (a) that the "state law claim . . . involve[d] acts of reproduction, adaptation, performance, distribution or display" and (b) that the state law claim does "not include any extra elements that make it qualitatively different from a copyright infringement claim."  Briarpatch, 373 F.3d at 305–306.  The Second

Circuit has taken a restrictive view on what elements transform a state law claim into one that is "qualitatively different" from a Copyright claim, holding that awareness and intent, for instance, are not "qualitatively different," while elements such as a breach of a fiduciary duty are considered to be "qualitatively different." Id.; Computer Assocs. Intern., Inc. v. Altai, Inc., 982 F.2d 693, 717 (2d Cir. 1992) ("An action will not be saved from preemption by elements such as awareness or intent . . . ." (citation omitted)).

## B. As to Whether Plaintiffs' Claims Arise Under the Copyright Act

### 1. As to Whether the Plaintiffs' Second or Third Amended Complaint is the Operative Complaint For Determining Removal Jurisdiction

As an initial matter, the parties disagree as to whether the court should look to the Plaintiffs' second amended complaint, which was filed prior to removal, or the third amended complaint, which was filed following removal to this Court. The Plaintiffs argue that the third amended complaint is the operative complaint for purposes of determining removal jurisdiction. In so arguing, the Plaintiffs rely on Aliano v. City of Hartford, No. 3:09–cv–2118 (SRU), 2010 WL 2698509, at *2 (D. Conn. July 8, 2010). There, the court rejected the defendants' argument that it should not consider a post removal amended complaint because the plaintiffs were engaging in "forum shopping" by eliminating their federal claims so that the case would be remanded to state court. The court reasoned that there w

as no support for such a finding in the record and that the defendants had failed to show any prejudice resulting from the court granting the plaintiffs leave to amend complaint. Id. The Defendants counter that Aliano is inapposite because the record is "clear" in this case that the Plaintiffs were motivated by a desire to "forum shop" and therefore the Court should disregard the plaintiff's third amended complaint. The Court disagrees.

As in <u>Aliano</u>, here, there is nothing in the record to suggest that the Plaintiffs amended their complaint solely for the purpose of forum shopping.  <u>See</u> <u>Aliano</u>, 2010 WL 2698509 at *2. Moreover, even if there were such evidence, to ignore the Plaintiffs' amended complaint would be contrary to the well-known rule that the Plaintiff is "master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."  <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); <u>see, e.g.</u>, <u>Venturino v. First Unum Life Ins. Co.</u>, 724 F. Supp. 2d 429, 431 (S.D.N.Y. 2010) (looking to the plaintiff's proposed amended complaint following removal for purposes of determining subject matter jurisdiction).  As such, the Court will examine the Plaintiffs' Third Amended Complaint for purposes of determining whether this court has removal jurisdiction.

## 2. As to Whether the Plaintiffs' State Law Claims Are Preempted by the Copyright Act

The Plaintiffs' Third Amended Complaint does not contain federal claims.  Rather, it includes exclusively state law claims against the Defendants for (A) breach fiduciary duty, (B) misappropriation of trade secrets, (C) tortious interference with business opportunities, (D) usurpation of corporate opportunities, and (E) an accounting.  The Defendants argue that these state law claims are preempted by the Copyright Act, and, therefore, fall under an exception to the "well-pleaded complaint" rule.  For the reasons set forth below, the Court finds that the Plaintiffs' state law claims do not arise under the Copyright Act and are therefore not preempted.

### A. Breach of Fiduciary Duty

The Defendants allege that the Plaintiffs' breach of fiduciary duty claim is preempted by the Copyright Act because the claim "is based on misappropriating Thinkscan's trade secrets . . . and using the stolen trade secrets to unfairly compete and usurp Thinkscan's business

opportunities for the benefit of their other company, Implicit." (The Defs.' Mem. of Law in Opp'n to the Pls.' Mot. to Remand, at 16.)

In a suit for copyright infringement, "the plaintiff must establish its ownership of a valid copyright, and that the defendant copied the copyrighted work." <u>Computer Assocs. Intern., Inc.</u>, 982 F.2d at 701. The Second Circuit has held that the Copyright Act will not preempt a state law claim that includes "any extra elements that make it qualitatively different from a copyright infringement claim." <u>Briarpatch Ltd., L.P.</u>, 373 F.3d at 305–06. A "state law claim is qualitatively different if it requires such elements *as breach of fiduciary duty*." <u>Id.</u> at 306 (emphasis added); <u>Computer Assocs. Intern., Inc.</u>, 982 F.2d at 717 ("However, many state law rights that can arise in connection with instances of copyright infringement satisfy the extra element test, and thus are not preempted by section 301 [of the Copyright Act]. These include unfair competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets." (citation omitted)).

Under New York law, a breach of fiduciary duty claim requires that the defendant owe the plaintiff a fiduciary duty and breached that duty. <u>Iannuzzi v. American Mortg. Network, Inc.</u>, 727 F. Supp. 2d 125, 137 (E.D.N.Y. 2010). The Plaintiffs allege that the Defendants Weinberger, Westen, and Bornstein owed a fiduciary duty to Thinkscan because they were officers of Thinkscan, which they breached by misappropriating Thinkscan's property for their own benefit and establishing a competing business while still employed at Thinkscan. (Third Am. Compl. ¶¶ 113-115.) The Court finds that because the Plaintiffs allege that the Defendants owed the Plaintiffs a fiduciary duty, the claim is "qualitatively different" than a copyright claim and is therefore not preempted by the Copyright Act.

### B. Misappropriation of Thinkscan's Trade Secrets

The Defendants also argue that the Plaintiffs' misappropriation of trade secrets claim is preempted by the Copyright Act because it is based solely on "misappropriation and use for profit of written copyrightable matter." (The Defs.' Mem. of Law in Opp'n to the Pls.' Mot. to Remand, at 16.)

Under New York law, to plead a trade secret claim, a Plaintiff must demonstrate: "(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." Medtech Prods., Inc. v. Ranir, LLC, 596 F. Supp. 2d 778, 787 (S.D.N.Y. 2008) (citing North Atlantic Instruments, Inc. v. Haber, 188 F.3d 38, 44 (2d Cir. 1999)).

Courts have held that misappropriation claims "grounded solely in the copying of protected expression" do not satisfy the "general scope requirement" and are preempted by the Copyright Act. Integrative Nutrition, Inc., 476 F. Supp.2d at 296–97 (internal quotation marks and citations omitted) (holding that the plaintiff's unfair competition claim was preempted because the primary allegation in the claim was that the defendants "plagiarized" the plaintiff's website.") In contrast, New York courts have held that misappropriation claims "based upon breaches of confidential relationships, breaches of fiduciary duties and *trade secrets* have been held to satisfy the extra element test and avoid § 301 [of the Copyright Act] preclusion." Kregos v. Associated Press, 3 F.3d 656, 666 (2d Cir. 1993) (emphasis added). The Second Circuit has determined that trade secret claims which are "grounded upon a defendant's breach of a duty of trust or confidence to the plaintiff through improper disclosure of confidential material" supplies the "'extra element' that qualitatively distinguishes such trade secret causes of action from

claims for copyright infringement that are based solely upon copying." Computer Assocs. Intern., Inc., 982 F.2d at 717.

Indeed, in Computer Associates International, Inc. v. Altai, Inc., 982 F.2d 693 (2d Cir. 1992), the Second Circuit noted that even trade secret claims based solely upon "use" and "copying" would not be preempted by the Copyright Act "where the use of copyrighted expression is simultaneously the violation of a duty of confidentiality established by state law . . . ." Id. at 719 (holding that the plaintiff's former employee who stole a computer code and used it to design a program for the defendant could state a claim of misappropriation of a trade secret that was not preempted by the Copyright Act); see also White House/Black Market, Inc. v. Cache Inc., No. 10 Civ. 5266(PGG), 2010 WL 2985232, at *1, 4 (S.D.N.Y. July 27, 2010) (finding that misappropriation of a trade secret claim based on **a** former employee taking confidential materials to a new competing firm was not preempted as plaintiffs' claims were "grounded" upon the defendants' "alleged breach of fiduciary duty").

Here, the Plaintiffs' misappropriation claim is based on more than mere copying — in addition to alleging that Plaintiffs misappropriated Thinkscan's customer lists, presentation and website material, and software platforms without permission, the Plaintiffs allege that these materials were "confidential," "not available to the public," and that "no other company or person [aside from Thinkscan's employees] had access" to them. (Third Amen. Compl. ¶¶ 125, 127, 130.) These allegations suggest the existence of a confidential relationship, making the claim "qualitatively different" than a Copyright claim. See Computer Assocs. Intern., Inc., 982 F.2d at 717. The Plaintiff's trade secret claim is therefore not subject to preemption.

## C.    Tortious Interference with Business Relations

The Defendants also argue that the Plaintiffs' claim for tortious interference with Thinkscan's business relations is preempted by the Copyright Act because the Plaintiffs' claim "relies on allegations of misappropriation of intellectual property and alleged Thinkscan clients." (The Defs.' Mem. of Law in Opp'n to the Pls.' Mot. to Remand, p. 16.)

Under New York law, to establish a claim based on tortious interference with business relations, a plaintiff must demonstrate: "(1) the existence of a business relationship with a third party; (2) defendant's interference with the relationship; (3) that the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair or improper means; and (4) that the plaintiff sustained damages."  Quadrille Wallpapers and Fabric, Inc. v. Pucci, No. 1:10–CV–1394 (LEK), 2011 WL 3794238, at *5 (N.D.N.Y. Aug. 24, 2011) (citing Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006)).

Where a tortious interference claim is grounded in allegations beyond mere copying, courts have found a misappropriation of trade secret claims to be "qualitatively different" than a Copyright Act claim.  See e.g., Quadrille Wallpapers and Fabric, Inc., 2011 WL 3794238 at *6 (finding a tortious interference claim to not be preempted where the plaintiff alleged that the defendant breached a duty of confidentiality); cf. Miller v. Holtzbrinck Publishers, L.L.C., 377 Fed. Appx. 72, 73–74 (2d Cir. 2010) (finding a tortious interference claim to be preempted because the plaintiff's theory rested solely on the theory that "[the third-party defendants] tortiously interfered with her business relations and converted her literary work by publishing the book without authorization [by her] or credit [to her]" (alteration in original)).

Here, the Plaintiffs allege that the Defendants Weinberger and Westen were officers of Thinkscan, pursued several clients of Thinkscan's clients shortly after they left Thinkscan, and

disparaged Thinkscan's reputation by making negative remarks about Thinkscan to its clients. (See Third Am. Compl ¶¶ 132–140.)  Therefore, because the Plaintiffs' tortious interference with business relations claim does not rely solely on allegations of use and copying Thinkscan's work; it is "qualitatively different" than a Copyright Right Act claim and is therefore not preempted.

### D.    Usurpation of Corporation Opportunities

The Defendants make a similar argument with respect to the Plaintiffs' usurpation of corporate opportunities claim.  (The Defs.' Mem. of Law in Opp'n to the Pls.' Mot. to Remand, at 16.)  Under New York law, to make a usurpation of corporate opportunity claim, a plaintiff must allege that the defendants were corporate fiduciaries of the plaintiff who, without the plaintiff's consent, "divert[ed] and exploit[ed] for their own benefit any opportunity that should be deemed an asset of the corporation."  Alexander & Alexander of New York, Inc. v. Fritzen, 147 A.D.2d 241, 246 (1st Dep't 1999) (internal citations omitted).

Here, the Plaintiffs allege that the Defendants Weinberger, Westen, and Bornstein were officers of Thinkscan and therefore owed fiduciary duties of loyalty and honesty to Thinkscan, which they breached by pursuing business opportunities of Thinkscan's for their benefit.  (See Third Am. Compl. ¶¶ 141–146.)  The gravamen of their claim is allegations that the Defendants owed Thinkscan a fiduciary duty of loyalty and honesty.  Therefore, these claims are "qualitatively different" than copyright claims and are not preempted by the Copyright Act.  See Briarpatch Ltd., L.P., 373 F.3d at 306 ("[A] state law claim is qualitatively different if it requires such elements as breach of fiduciary duty.")

### E. An Accounting

Finally, the Defendants argue that the Plaintiffs' claim for an accounting is preempted by the Copyright Act because the Copyright Act offers the same "type of relief"—namely damages. (The Defs.' Mem. of Law in Opp'n to the Pls.' Mot. to Remand, p. 16.)  However, the Defendants must also show that the claim does not contain an element, such as a fiduciary duty, which makes the claim "qualitatively different."  Briarpatch, 373 F.3d at 305–06.

Under New York law, an accounting is an equitable remedy that requires that the plaintiff allege a fiduciary or confidential relationship with the defendant.  Nuss v. Sabad, 976 F. Supp. 2d 231, 248 (N.D.N.Y. 2013) (citation omitted).  Here, the Plaintiffs accounting claim alleges that the Defendants Weinberger, Westen, and Bornstein owed Thinkscan fiduciary duties.  (Third Am. Compl. ¶ 149.)  Therefore, the accounting claim is not preempted by the Copyright Act. See Briarpatch Ltd., L.P., 373 F.3d at 305.

### 3. As to Whether the Defendants' Counterclaims Arise under the Copyright Act

The Defendants also argue that even if the Plaintiffs' claims do not arise under the Copyright Act, the Defendants' counterclaims for a declaratory judgment of copyright ownership and for a declaratory judgment that the Defendants did not infringe on the Plaintiffs' copyrights arise under the Copyright Act and therefore confer federal jurisdiction to this Court.  (The Defs.' Mem. of Law in Opp'n to Pls.' Mot. to Remand, at 8–10.)  However, the Court finds that the Defendants' counterclaim do not arise under the Copyright Act and therefore do not confer federal jurisdiction on this Court.

### A. Legal Standard

In 2011, Congress crafted a statutory exception to the "well pleaded complaint rule":  the Leahy-Smith America Invents Act, 28 U.S.C. § 1454, which provides for removal of a civil

action "in which any party asserts a claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights." Congress passed 28 U.S.C. § 1454 in response to the Supreme Court's decision in Holmes Group, Inc. v. Vornado Air Circulation Systems, 535 U.S. 826, 122 S. Ct. 1889, 153 L.Ed.2d 13 (2002), which held that a defendant's counterclaim under the Copyright Act could not serve as the basis for federal jurisdiction. See Andrews v. Daughtry, 994 F. Supp. 2d 728, 731–32 (M.D.N.C. 2014) ("The rule articulated in Holmes Group meant that state courts could end up adjudicating a significant amount of federal patent claims. In response, Congress passed the so-called "Holmes Group fix," included in the 2011 Leahy–Smith America Invents Act." (citing Joe Matal, A Guide to the Legislative History of the America Invents Act: Part II of II, 21 Fed. Cir. B.J. 539, 539 (2012)).

Therefore, 28 U.S.C. § 1454, grants federal jurisdiction to defendants' counterclaims that arise under the Copyright Act. See, e.g., Acorne, 2014 WL 3548632, at *6 ("If defendants' counterclaims, which were asserted after removal, arise under the Copyright Act, this court would have jurisdiction over the counterclaims, and could exercise supplemental jurisdiction over plaintiffs' claims."); Concordia Partners, LLC v. Marcelle, No. 2:14–cv–09 (GZS), 2014 WL 4060253, at *1 (D. Maine Aug. 14, 2014); Andrews, 994 F. Supp. 2d at 732 ("No longer is a defendant with a patent or copyright counterclaim bound by a plaintiff's well-pleaded state law complaint to litigate in a state court.").

### B. As to Whether the Court Can Consider Counterclaims Filed After Removal

As an initial matter, the Plaintiffs argue that a counterclaim may only confer federal jurisdiction if it is filed before the motion to remand. (The Pls.' Reply Mem. of Law in Further Support of the Pls.' Mot. to Remand.) Since the Defendants filed its declaratory judgment

counterclaims after removal, the Plaintiffs allege that the Court should not consider them for purposes of this motion.  (Id.)

To support this contention, Plaintiffs rely on cases that do not involve copyright counterclaims or the application of 28 U.S.C. § 1454.  See, e.g., Studebaker-Worthington Leasing Corp. v. Michael Rachlin & Co., LLC, 357 F. Supp. 2d 529, 532, 534 n. 6 (E.D.N.Y. 2004) (noting in dicta that the defendant's counterclaim for fraudulent inducement filed after removal cannot confer federal jurisdiction); Brown & Michael, P.C. v. Cardoso, No. 5:05CV209 (FJS), 2005 WL 1528748, at *1, *3 n. 2 (N.D.N.Y. June 27, 2005) (holding that the defendant's removal petition based on legal malpractice was defective).  As such, the Court finds these cases inapplicable.

However, two recent cases suggest that the Court should consider the Defendants' counterclaims.  In Acorne Productions, LLC v. Tjeknavorian, No. 14–CV–2179 (KAM), 2014 WL 3548632, at *6 (E.D.N.Y. July 17, 2014), Judge Kiyo Matsumoto noted in dicta that "[i]f defendants' counterclaims, *which were asserted after removal*, arise under the Copyright Act, this court would have jurisdiction over the counterclaims, and could exercise supplemental jurisdiction over plaintiffs' claims."  Id. (emphasis added).  Similarly, in Concordia Partners, LLC v. Pick, No. 2:14–cv–09 (GZS), 2014 WL 4060253, at *4 (D. Maine Aug. 14, 2014), a court rejected a plaintiff's argument that the court could not consider the defendant's Copyright Act counterclaim because it was filed after removal.  The court reasoned that such a result would be contrary to the plain language of 28 U.S.C. § 1454 and would "unduly tend to exalt form over substance."  Id. (internal citation omitted).

The Court finds the reasoning of <u>Concordia</u> and <u>Acorne</u> to be persuasive and consistent with the plain language of 28 U.S.C. § 1454(a). Accordingly, in determining removal jurisdiction under 28 U.S.C. § 1454(a), the Court will examine the Defendants' counterclaims.

### C. As to Whether the Defendants' Counterclaims Arise under the Copyright Act

The Defendants' Answer and Counterclaims assert claims for various state law causes of action as well as a counterclaims seeking a declaratory judgment of copyright ownership and a declaratory judgment that the Defendants did not infringe upon the Plaintiffs' copyrights. (The Defs.' Answers and Countercls. ¶¶ 398–409.) The Defendants argue that these counterclaims "arise under the Copyright Act" because they are "explicitly based on copyright law" and therefore confer federal jurisdiction under 28 U.S.C. § 1454(a). The Court disagrees and finds that the Defendants' declaratory judgment claims do not arise under the Copyright Act.

Here, the Defendants' counterclaims assert two claims for a declaratory judgment as to the ownership of the copyright and a declaratory judgment that the Defendants did not commit copyright infringement. It is well-settled that a claim seeking a declaratory judgment arises under the Declaratory Judgment Act, 28 U.S.C. § 2201 and does not automatically "extend the jurisdiction of the federal courts." <u>Medtronic v. Mirowski Family Ventures, LLC</u>, 134 S. Ct. 843, 848, 187 L.Ed.2d 703 (2014) (internal citations omitted). Rather, courts ask whether "a coercive action brought by the declaratory judgment defendant would necessarily present a federal question." <u>Id.</u> To confer federal jurisdiction, a declaratory judgment must also present an "actual controversy," which New York courts in the copyright context have interpreted to mean that a "defendant's declaratory action must be grounded on the defendant's reasonable apprehension that the plaintiff will claim infringement and that he will act affirmatively to

enforce the protection which he claims." Prudent Pub. Co., Inc. v. Myron Mfg. Corp., 722 F. Supp. 17, 21 (S.D.N.Y. 1989).

Where claimants have sought a declaratory judgment as to copyright ownership that center on interpreting an agreement, New York courts have held that their claims do not confer federal jurisdiction as they do not necessitate the interpretation of the Copyright Act. In T.B. Harms Co. v. Eliscu, 339 F.2d 823 (2d Cir. 1964), for example, at issue was whether one of the defendants had retained his interest in four copyrighted songs and validly assigned his interest to a second defendant, or had assigned his interest to the plaintiff's agent. The plaintiff brought an action in federal court seeking a declaratory judgment as to the ownership of the copyrighted songs. Id. at 825. Judge Henry Friendly found that the dispute at issue involved whether the parties had agreed to an assignment of the copyright and not compatibility with or construction of the Copyright Act. Id. at 827. Because the declaratory judgment claim did not necessitate interpretation of the Copyright Act, the Second Circuit found that there was no federal jurisdiction. Id.; accord Basset v. Mashantucket Pequot Tribe, 204 F.3d 343, 355–356 (2d Cir. 2000) ("[W]e conclude that, for claims of infringement arising from, or in the context of, an alleged contractual breach, this circuit's standard for determining jurisdiction under Section 1338 is furnished by T.B. Harms.").

Similarly, in Acorne Prods., LLC v. Tjeknavorian, No. 14–CV–2179 (KAM), 2014 WL 3548632 (E.D.N.Y. July 9, 2014), the plaintiff-film producer brought an action against the defendant-filmmakers to return all materials associated with the film in state court under a breach of contract theory. Following removal, the defendants brought a counterclaim in federal court seeking a declaratory judgment that defendants were owners of the copyright. Id. at *1–3. Relying on T.B. Harms, Judge Matsumoto found that the defendants' counterclaim did not

confer federal jurisdiction under 28 U.S.C. § 1454, reasoning that the "the issue of who owns the copyright is dictated by the parties' agreement, and not a term of the [Copyright Act] Act." Id. at *7.

The Court finds T.B. Harms and Acorne to be directly applicable to the Defendants' counterclaim seeking a declaratory judgment as to copyright ownership. With respect to that claim, the key dispute between the parties is whether the parties' business venture was organized as an unincorporated partnership, as the Defendants allege, or a limited liability company, as the Plaintiffs contend, to which the Defendants owed fiduciary duties of loyalty, confidentiality, and honesty. The question of whether the Defendants owed Thinkscan a fiduciary duty is one that is defined by state law and therefore does not necessitate a construction of the Copyright Act. See T.B. Harms Comp., 339 F.2d at 827 ("The crucial issue is whether or not Eliscu executed the assignment to Dreyfus; possibly the interpretation of the initial May, 1933, contract is also relevant, but if any aspect of the suit requires an interpretation of the Copyright Act, the complaint does not reveal it.")

The Defendants also assert a counterclaim seeking a declaratory judgment that they did not commit copyright infringement. (The Defs.' Answer and Countercls. ¶ 528.) At first blush this claim appears to "arise under the Copyright Act" because infringement is a remedy offered by the Copyright Act and determining whether the Defendant infringed on the Plaintiffs' copyright would seem to clearly necessitate an interpretation of the Copyright Act. See Briarpatch, 373 F.3d at 306. However, when determining declaratory judgment jurisdiction, courts "often look to the character of the 'threatened action.'" Medtronic, 134 S. Ct. at 848.

Here, the Defendants' counterclaim seeking a declaratory judgment as to non-infringement asks this Court to declare that the "Defendants did nothing improper regarding the

Subject Works and their related copyrights" and "did not do any of the acts they are being accused of by Plaintiffs." (The Defs.' Answer and Countercls. ¶¶ 529, 526.) In order to make such a determination, the Court will have to look beyond whether the Defendants possessed a copyright to the alleged works and must also construe whether the Defendants were officers of Thinkscan who owed fiduciary duties to Thinkscan. In other words, the Defendants may label their counterclaim as seeking a declaratory judgment of non-infringement, but the counterclaim is more accurately understood as seeking a judgment that the Defendants did not owe Thinkscan fiduciary duties of loyalty and honesty, and as such did nothing wrong in allegedly using Thinkscan's property to obtain clients for Implicit, their new competing company. As described at length above, a determination as to whether the Defendants owed a fiduciary duty to the Plaintiffs is a matter of state law that makes such a claim "qualitatively different" than a Copyright Act claim. See Briarpatch Ltd., 373 F.3d at 305 ([A] state law claim is qualitatively different if it requires such elements as breach of fiduciary duty[.]")

Accordingly, the Court finds that the Defendants' declaratory judgment claims as to ownership and non-infringement do not arise under the Copyright Act. Therefore, this Court does not have removal jurisdiction pursuant to 28 U.S.C. § 1454.

## C. As to Whether Plaintiff Should be Awarded Attorneys' Fees

Plaintiffs have moved for an award of attorneys' fees and costs pursuant to 28 U.S.C. 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Granting an award of attorneys' fees incurred as a result of a removal is within the district court's discretion. Acorne Prods., LLC, 2014 WL 3548632 at *7 (internal citation omitted). However, "absent unusual circumstances, attorney's fees should not be awarded when the removing party

has an objectively reasonable basis for removal." Id. (quoting Martin v. Franklin Capital Corp., 546 U.S. 132, 136, 126 S. Ct. 704, 163 L.Ed.2d 547 (2005)) (internal quotation marks omitted).

While the Court finds that there is no basis for federal jurisdiction in this case, the Court does find that the Defendants had an objectively reasonable basis for removal given the complex issues involved and that this is a somewhat unsettled area of the law. See id. Accordingly, the Plaintiffs' motion for attorneys' fees is denied.

### III. CONCLUSION

For the foregoing reasons, the Court finds there is no basis for federal jurisdiction in this case. In this regard, the Court declines to exercised supplemental jurisdiction over the Plaintiffs' state law claims. This Courts has discretion to exercise supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. See Klein & Co. Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262–63 (2d Cir. 2006) (internal citations omitted) ("[T]he decision to retain jurisdiction is discretionary and not a litigant's right[.]") The interests of judicial economy, convenience, fairness, and comity are not served by deciding the Plaintiffs' state law claims in this Court given that the state law claims have already been litigated in state court for over two years and the federal case is in the early stages of its litigation. Id. at 262 ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.") It is hereby:

**ORDERED** that the motion to remand the Plaintiffs' state law claims to the Supreme Court of the State of New York, County of Suffolk, is hereby granted, and the motion for attorneys' fees and costs is denied; and it is further

**ORDERED** that the Clerk of Court is directed to close the case.

**SO ORDERED.**
Dated: Central Islip, New York
October 23, 2014

_ */s/ Arthur D. Spatt*___
ARTHUR D. SPATT
United States District Judge